UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

CASE NO.:21-CR-20377 GAYLES

**UNITED STATES OF AMERICA,**
 *Plaintiff*,

vs.

**JUAN JOSE VALENCIA ZULUAGA.**
 *Defendant.*
_____/

## DEFENDANT'S MOTION FOR DOWNWARD VARIANCE AND INCORPORATED SENTENCING MEMORANDUM

 Comes Now the Defendant, Juan Jose Valencia Zuluaga, by and through his undersigned counsel, and hereby submits the instant Sentencing Memorandum wherein defense counsel moves this Honorable Court to find that a downward variance is proper in the instant matter. The following is set forth in support of the Defendant's position:

 The instant Memorandum of law shall be outlined in the following fashion: Section I is the introduction, Section II will address Title 18, U.S.C. §3553 factors. Lastly, Section III will summarize why the recommended sentence is reasonable, given the totality of the analysis contained herein.

### I. INTRODUCTION

 Mr. Valencia Zuluaga pled guilty on October 14, 2022, to the one-count Indictment, which charges him with conspiracy to distribute five kilograms or more of cocaine knowing that it would be unlawfully imported into the United States, in violation of 21 U.S.C. § 963.

 There are no objections to the PSIR prepared in this matter and the parties agree that the applicable total offense level is 35, resulting in a sentencing guideline range of 168 – 210 months. Mr. Valencia Zuluaga respectfully requests that this Honorable Court consider the foregoing arguments

and find that a downward variance to 150 months is substantiated.

This Memorandum shall set forth the facts and rationale that impact the pertinent sentencing factors and provide other relevant information this Court may take into account in fashioning a reasonable sentence, that is, one that is "sufficient, but not greater than necessary" to achieve the goals of sentencing and otherwise comply with the purposes of Title 18, U.S.C. § 3553.

## II. THE DEFENDANT'S TITLE 18 U.S.C. §3553(a) DISCUSSION

As a result of the Supreme Court's opinion in *United States v. Booker*, 543 U.S. 220 (2005), the Federal Sentencing Guidelines became an advisory, rather than mandatory, system of sentencing. Although a district court is no longer bound to impose a guidelines sentence, it still must consult the guidelines and consider the suggested sentence when fashioning a *reasonable sentence*. That is, the court must consult the guidelines and calculate the range suggested, and thereafter consider the factors enumerated in Title 18 U.S.C. §3553(a) when imposing a reasonable sentence either above or below the advisory guidelines. Recent decisions have made it clear that the district courts are only required to give "some weight" to the advisory guidelines, just as they must give to the other §3553 factors, and any attempt to give special weight to the guidelines is contrary to *Booker*. *See Gall v. United States,* 128 S.Ct. 586 (2007), and *Kimbrough v. United States,* 128 S.Ct. 558 (2007). Further, the *Kimbrough* decision reflects that a district court's judgment that a particular sentence is "sufficient, but not greater than necessary," is entitled to great weight even if the district court's sentence is based on a disagreement with the policies behind the applicable guidelines. The ultimate sentence will be upheld as long as it is a *reasonable sentence*. *United States v. Talley*, 431 F.3d 784 (11th Cir. 2005); *United States v. Crawford*, 407 F.3d 1174 (11th Cir. 2005).

Clearly, the court now has discretion in fashioning an appropriate and reasonable sentence under the facts and circumstances of each case, and considering the history and characteristics of

the particular defendant, the nature and circumstances of the offense, as well as any possible sentencing disparity, among other factors (Title 18 U.S.C. §3553(a)). After "consult[ing] and correctly determin[ing] the sentencing range prescribed by the Sentencing Guidelines…[t]he court must then impose a reasonable sentence in light of the factors enumerated in 18 U.S.C. §3553(a)." *U.S. v. McBride,* 511 F. 3d 1293 (11th Cir. 2007); *See also Gall v. United States,* 552 U.S. 38 (2007). The applicable 3553(a) factors are set forth and discussed below.

There are seven § 3553(a) factors to be considered in imposing a sentence. Accordingly, the law requires the sentencing court to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in the following subsection. The court, in determining the particular sentence to be imposed, should consider the following:

1. **THE NATURE AND CIRCUMSTANCES OF THE OFFENSE**

Mr. Valencia Zuluaga was charged and pled guilty to Conspiracy to distribute five kilograms or more of cocaine, knowing it would be unlawfully imported into the United States, in violation of 21 U.S.C. § 963.

(A) <u>History and characteristics of the Defendant</u>- Mr. Valencia Zuluaga has touched many lives in a positive way. The many letters written and submitted to this Court provide ample proof of his many good deeds and commitment to the wellbeing of others. *See* Exhibit A. Admittedly, he has committed a serious crime; notwithstanding Mr. Valencia Zuluaga's admitted transgression, his good deeds should be considered in evaluating his history and characteristics.

He has lived in regions of the world commonly and notoriously known as drug trafficking epicenters; the temptation of otherwise unattainable riches overcame his better judgment. He wholeheartedly regrets his decision to join the nefarious drug trafficking world. His family, friends and most that know him consider him a role model who is a caring and hardworking person. He has been a devoted, compassionate and considerate friend, son, father, and husband. He has always

enjoyed a close and loving relationship with his parents. Mr. Valencia Zuluaga is truly a compassionate and giving man guilty of making poor decisions that are incongruent with his family values. At this point he fully accepts responsibility for his transgressions and understands that his poor decisions will undoubtedly result in a lengthy prison sentence.

    2.    THE NEED FOR THE SENTENCE IMPOSED

(A)    <u>To reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense</u>- The punitive effect of a lengthy sentence of over 12 years shall visit upon Mr. Valencia Zuluaga, reflects the seriousness of the offense, promotes respect for the law and surely provides just punishment for this offense. Subjecting him to the deprivation of liberty and the accompanying absence from familial activities which he has always enjoyed is punishment that promotes respect for the law and reflects the seriousness of the offense. He will serve this sentence in a foreign country and will not see his children for a prolonged period of time. Additionally, his incarceration will not end when his sentence is completed because he will remain in custody throughout his immigration deportation proceedings. The length of the sentence and the prolonged separation from his family certainly reflect the seriousness of the offense, promote respect for the law and provide more than adequate punishment for the offense.

(B) & (C)    <u>The need to protect the public from further crimes of the Defendant and to afford adequate deterrence to criminal conduct</u> - General deterrence in the context of this case will most likely not be accomplished no matter the length of the sentence. It would be foolish to believe that similarly situated citizens in Colombia would be notably deterred as a result of the ultimate sentence in this case. Will any sentence truly deter similarly situated people: the realistic response is that most if not all, individuals that are similarly situated, simply do not think about the ultimate consequences of their actions before undertaking this variety of criminal activity. Unfortunately, foreigners hailing from economically depressed and disadvantaged backgrounds do not undertake

a cost benefit analysis based on American jail sentences.

Specific deterrence is adequately served by the recommended sentence which will surely serve to assure Mr. Valencia Zuluaga, a first-time offender, does not recidivate. The truly punitive effect of serving a lengthy prison sentence in a foreign country without the benefit of family visits will deter him from committing crimes in the future. His association with the drug trafficking world has been forever severed as it has been widely reported in the Colombian media that he provided key testimony against his former associates. Although these media accounts are bare allegations, unsubstantiated, and speculative in nature, the harm caused by the perception they create is palpable. The most significant report was that he was slated to be a star witness against the most notorious drug trafficker in recent Colombian history, Dario Antonio Usuga David, alias "Otoniel". Mr. Valencia Zuluaga's branding as a cooperator will undoubtedly foreclose any future involvement in drug trafficking crimes and expose him to the lifelong dangers of underworld retaliation and retribution. A prolonged sentence will therefore not provide any additional protection to the public from further crimes of the Defendant.

(D) <u>The need to provide the Defendant with needed educational or vocational training, medical care or other correctional treatment</u> - There are no known special needs associated with the Defendant's educational or vocational training, nor is there a need for any correctional treatment.

Mr. Valencia Zuluaga requires, critical and necessary, specialized medical treatment because he has been diagnosed with a serious heart condition, Wolff-Parkinson-White syndrome. *See* Exhibits B – F consisting of various translated medical records. He had his first of three heart attacks at age 33 and has had three unsuccessful heart surgeries. Sudden Cardiac Death, considered rare in most patients, presents a lifelong threat for Mr. Valencia Zuluaga because his Wolff-Parkinson-White condition cannot be treated with the commonly utilized surgical procedure.

Unfortunately, the portion of his heart that is causing the disorder to manifest unpredictably cannot be treated utilizing the procedure normally used to manage the condition due to the mortal danger the surgical remedy presents in his unique situation. Doctors have twice attempted to surgically treat his condition; however, they have concluded that the source of his Wolff-Parkinson-White symptoms cannot be surgically treated due to the particularly precarious area of his heart that is affected by the syndrome.

Mr. Valencia Zuluaga's medical situation is exacerbated by an injury that prevents him from exercising regularly. He tore his meniscus and damaged the ligaments in his right knee. These injuries require surgery that several orthopedic doctors have refused to undertake because of the mortal danger the use of anesthesia presents due to his specific heart condition. The knee injury is especially problematic for him because aside from the surgery that is commonly utilized to treat Wollf-Parkinson-White Syndrome, regular exercise is recommended and key to managing the untreated condition. The combination of this heart condition and his knee injury make the management of his condition through traditional means impossible.

Mr. Valencia Zuluaga must manage his potentially fatal Wolff-Parkinson-White syndrome through lifestyle regimens recommended by his cardiologist. He must keep his cholesterol levels low and avoid anything that causes high blood pressure. He needs to abide by a strict heart healthy diet and rigorously work to maintain his weight down. These recommendations are in addition to the most important task he must undertake, regular exercise. The majority of his cardiologist's suggestions are extraordinarily difficult, if not impossible, to consistently implement while in the custody of the Bureau of Prisons.

Mr. Valencia Zuluaga is unlikely to receive the specialized medical attention he requires while in the custody of the Bureau of Prisons. The knee surgery he needs is unlikely to occur given his heart condition and the apprehension of doctors to perform surgery on him because of the danger

the implementation of anesthesia would visit upon him. His need for regular exercise to manage his condition will be extraordinarily challenging while he is incarcerated with an untreated knee injury and the unavailability of specialized exercise equipment. Managing his condition through other heart healthy routines will be daunting as well. Mr. Valencia Zuluaga's Wolff-Parkinson-White syndrome and his other physical disabilities combine to produce a medical health status that is extraordinary and warrants a downward sentencing variance.

### 3. THE KINDS OF SENTENCES AVAILABLE

The sentencing range is 10 years to life imprisonment, 5 years supervised release, $10,000,000 fine, and a $100 special assessment. Mr. Valencia Zuluaga meets the criteria set forth in 18 U.S.C. §3553(f)(1)-(5), Safety Valve, therefore this Honorable Court may impose a sentence without regard to any statutory minimum sentence.

### 4. THE KINDS OF SENTENCE AND THE SENTENCING RANGE ESTABLISHED BY THE U.S.S.G.

The advisory U.S.S.G. as calculated by the United States Probation Office establishes a total offense level of 35, a criminal history category I, and a sentencing range of 168- 210 months. The Mr. Valencia Zuluaga prays this Honorable Court will vary downwards to a sentence of 150 months.

### 5. ANY PERTINENT POLICY STATEMENTS

There are no known policy statements that are pertinent to the issues presented in this case.

### 6. THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS WHO HAVE BEEN FOUND GUILTY OF SIMILAR CONDUCT

Undersigned counsel is unaware of any individual defendant with similar charges and/or circumstances that warrant a specific sentencing disparity analysis.

A general sentencing disparity exists in the execution of a deportable alien's sentence as opposed to an individual sentenced that enjoys a legal immigration status in the United States of

America. For example, Title 18 U.S.C. § 3624(c) authorizes the Bureau of Prisons, to the extent practicable, to assure that a prisoner serving a term of imprisonment spends a reasonable part of the final months of that term, no to exceed 12 months, under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry to the community. The right to participate in this and other pre-release programs applies to prisoners being released to a community within the United States, thereby excluding deportable aliens.

Mr. Valencia Zuluaga's immigration status of deportable alien, evidenced by the fact that he has an immigration detainer imposed by the United States Immigration and Customs Enforcement Miami Division, shall cause his sentence to be calculated and enforced differently. This immigration detainer shall cause him to be detained beyond the conclusion of his sentence while awaiting deportation and exclude him from any reductions associated with the First Step Act. Specifically, as a deportable alien, (a) he faces the prospect of more severe prison conditions; (b) he will be denied participation in Evidence Based Recidivism Programs under the First Step Act and (c) he is not able to earn Time Credit under the First Step Act. He will never receive the benefit of being housed in a minimum-security BOP facility or camp, even though he is a non-violent first-time offender. Similarly, he will not be afforded the benefit of transition to a half-way house for the final portion of his sentence; a benefit most United States citizens and others with legal immigration status enjoy. The disparate fashion in execution of Mr. Valencia Zuluaga's sentence as compared to defendants with legal immigration status should be taken into account in determining a fair and just sentence.

7. **THE NEED TO PROVIDE RESTITUTION TO ANY VICTIMS OF THE OFFENSE**

There are no known victims in this case.

### III.   CONCLUSION

Mr. Valencia Zuluaga is a good man that, undoubtedly, made poor choices for a brief period in his life. His crime is a serious one; this fact is undeniable. He fully accepts responsibility for his transgressions and continues to do everything he can to right the ship.  Mr. Valencia Zuluaga will be unable to see, hug and, most importantly, father his children for a very long time; as a foreigner his prison time in the United States shall certainly be extremely difficult.  He is a non-violent first-time offender who immediately accepted responsibility for his charges in an extraordinary fashion. The combination of uniquely debilitating medical ailments he suffers from will certainly present him with an extraordinarily challenging term of incarceration.  On behalf of Valencia Zuluaga and his family the undersigned requests that this Court consider the aforementioned rationale and sentence him accordingly to a term of 150 months of incarceration.

        Respectfully Submitted,
        David Fernandez, P.A.
        Attorney for Juan Jose Valencia Zuluaga

By :   s/ David M. Fernandez
       David M. Fernandez
       One Southeast Third Avenue,
       Suite 2120
       Miami, Florida 33131
       Telephone: (305) 480-8788
       Email:  David@DavidFernandezLaw.com

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed electronically via the CM/ECF system on April 6, 2023. The following parties shall be noticed accordingly:

Ellen D'Angelo
Assistant United States Attorney

Daren Grove
Assistant United States Attorney